THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COTTONWOOD ACRES, LLC., a limited liability company,<br><br>                      Plaintiff,<br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska Corporation,<br><br>                      Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:22-cv-00680-TC-DBP<br><br>District Judge Tena Campbell<br><br>Chief Magistrate Judge Dustin B. Pead |

This matter is before the court on related motions that arise from the suspended deposition of Greg Smalley.[1] Mr. Smalley is an underwriter and title operations manager for Defendant. In its motion, Plaintiff Cottonwood Acres, LLC, makes three requests: 1) to compel Greg Smalley's testimony; 2) to enter a protective order to prevent "further abusive behavior by Defendant's counsel, which has allegedly hindered the discovery process"; and 3) for sanctions due to "non-compliance with discovery obligations."[2] Defendant, First American Title Insurance Company, moves the court for an order 1) limiting the suspended deposition of Greg Smalley and 2) for a protective order regarding Plaintiff's discovery into Defendant's termination of an underwriting employee earlier this year.[3] In short, during the deposition of Mr. Smalley Plaintiff's counsel began to question him about an employee who was terminated earlier this year by Defendant. Then things went south, and the deposition was suspended following

---

[1] ECF No. 52, ECF No. 55.

[2] ECF No. 53.

[3] ECF No. 55.

disagreements between counsel. As set forth below the court denies Plaintiff's motion and grants Defendant's motion.

## BACKGROUND

Plaintiff Cottonwood Acres brings this suit alleging Defendant failed to provide insurance coverage owed under a title insurance policy. Cottonwood obtained some land from a third-party based on a final judgment entered by the Third District Court for Salt Lake County. That court authorized the transfer and empowered a signatory to sign as trustee. The signatory then conveyed the land. Concerned about the signatory's authority to transfer the land, and supposing the possibility that someone might challenge that authority, Cottonwood obtained title insurance from Defendant. The Third District Court then vacated the judgment finding it was improperly issued and declared the transaction whereby Cottonwood acquired title to the land null and void. Following a series of events, Cottonwood deeded the property back to the original owner. As a result of what happened, Cottonwood claims it lost millions of dollars' worth of land. Cottonwood sought reimbursement pursuant to the policy from Defendant and Defendant denied the claim. This suit followed.

The instant dispute arises from the disagreement of counsel during the March 28, 2024, deposition of Greg Smally. During the deposition, counsel for Cottonwood asked Mr. Smalley about whether any underwriters had been let go from their position and the reasons for their release. Defendant's counsel disagreed with this line of questioning. Ultimately the parties could not reach any agreement and the deposition was suspended.

## LEGAL STANDARD

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[4] At the discovery stage, relevancy is broadly construed and a request for discovery is considered relevant if "'there is any possibility the information sought may be relevant to a party's claim or defense.'"[5] Despite this broad standard, parties do not have an "entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."[6] Thus, "'the scope of discovery is limited to information relevant to any party's claim or defense.'"[7]

## DISCUSSION

As noted in Plaintiff's briefing, "[t]his case hinges on whether [Defendant's] omission and subsequent denial of coverage were part of an unreasonable and wrongful act of bad faith."[8] To this end, the parties agree that Plaintiff is entitled to certain discovery. This includes:

- "First American's internal decisions and actions that led to the denial of coverage to Cottonwood."[9]

- That Mr. Smalley may have information concerning "the context and decision-making processes within [Defendant] at the time the insurance policy was issued to Cottonwood" and that Mr. Smalley's testimony will "shed light on [Defendant's] internal policies and

---

[4] Fed. R. Civ. P. 26(b)(1).

[5] *Finneman v. Delta Airlines, Inc.*, 2021 WL 2905628, at *1 (D. Utah Mar. 11., 2021) (quoting *Dutcher v. Bold Films LP*, No. 2:15-cv-110-DB-PMW, 2017 WL 1901418, at *1 (D. Utah May 8, 2017)).

[6] *Gatti v. Granger Med. Clinic, P.C.*, No. 2:19-cv-00028, 2019 WL 6173749 at *2 (D. Utah Nov. 20, 2019) (unpublished) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendments).

[7] *Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*, No. 220CV00352JNPDAO, 2021 WL 3072607, at *1 (D. Utah Apr. 1, 2021) (quoting *Jensen v. W. Jordan City*, No. 2:12-cv-00736, 2015 WL 5254430 at *1, 2015 U.S. Dist. LEXIS 120730 at *3 (D. Utah Sep. 9, 2015) (unpublished).

[8] Pla. Opp p. 2, ECF No. 56.

[9] *Id.*; *see also* Def Reply p. 5, ECF No. 59.

  the specific circumstances under which the disputed title insurance policy was authorized, including any [alleged] discrepancies or omissions in the policy's issuance process."[10]

- Discovery regarding "Smalley's role and his interpretation of the events leading to the policy's issuance and subsequent claim denial."
- And ultimately, "what [Defendant] knew and when, and why [Defendant denied] insurance coverage."[11]

  Presumably, when deposing Mr. Smalley, who is not a designated 30(b)(6) witness, the focus was originally going to be on these issues and other issues Plaintiff identifies as relevant. Yet, at a certain point, the focus became the reasons why one of Defendant's employees was terminated earlier this year.

  In reviewing the transcript of the deposition, the court initially notes that neither Ms. Spencer, counsel for Plaintiff, nor Mr. Morris, counsel for Defendant, met the standards in the Utah Standards of Professionalism and Civility that all attorneys who practice before this court are expected to meet.[12] This is evident in the way objections were made, speaking over each other repeatedly throughout the deposition, in aggressive behavior by both counsel, and in statements such as "I've been waiting for you to ask questions all morning", "You don't have to hide the ball", "Don't live this case in your own little world. Don't play in your own ballpark", and "what you're doing is like circling and putting a big old star on this issue for me." Counsel in this case are admonished to review the Utah Standards of Professionalism and Civility and abide by its directives. A failure to do so may result in the court entering sanctions.

---

[10] *Id.*

[11] *Id.*

[12] DUCivR 83-1.2(a)(1) (noting that an attorney seeking to maintain active status in the court must comply with the Utah Standards of Professionalism and Civility); *see also* https://www.utcourts.gov/en/about/courts/sup/civility.html (last accessed 6/11/24).

Turning to the individual dispute, Ms. Spencer asked Mr. Smalley if he was "aware of any underwriters ever being let go from First American"?[13] Mr. Smalley responded "yes" and Mr. Morris objected based on foundation. Following heated exchanges between counsel Mr. Smalley responded that the person who was fired is Corey Snow and he was terminated "about a month or two ago" before the March 27th deposition.[14] Counsel for Defendant objected to this line of questioning arguing it is not proportional, and not relevant, claiming the reasons for someone being let go from Defendant this year has nothing to do with the claims in this case. Once again, counsel for both parties then broke down into accusations and threats of terminating the deposition. A discussion was had by counsel about what rules apply and on what grounds the deposition could be terminated. Eventually, Mr. Morris asked Mr. Smalley if Mr. Snow had "anything to do with Cottonwood Acres title policy at issue in this case." Mr. Smalley responded no, and responded no again to whether Mr. Snow had any role or anything to do with the policy.[15] After disagreeing further about the course of the deposition, Counsel agreed to seek guidance from the court.[16]

Cottonwood argues there are many "bases of relevance or potential relevance for the questions."[17] These include: the fact that the termination took place after the beginning of the litigation may be relevant; the testimony "is central to establishing the bad faith claim"; establishing unreasonableness; insight into internal policies; whether Defendant's underwriting process systematically overlooked known defects; and "state of mind and motive" of

---

[13] Dep. Tr. 71:9-10, attached as Ex. A. to Pla'.s Mtn ECF No. 53.

[14] Dep. Tr. 74:1-5.

[15] Dep Tr. 79:10-21.

[16] Dep. Tr. 80:16-25.

[17] Pla. Opp p. 11.

decisionmakers. Cottonwood also cites to *Cline v. Parker Industries, Inc.*,[18] in support of asking questions about Mr. Snow's firing, arguing asking "about the reasons for firing an employee in the same department—underwriting—where decisions are made about policy issuance, are not inherently embarrassing or oppressive."[19]

The court is not persuaded by Plaintiff's alleged bases of relevance or by *Cline*. To start, *Cline* involved a Title VII employment action. In allowing certain questions, the *Cline* court specifically noted the "deposition of a plaintiff in a Title VII employment action may fairly encompass inquiry into the reasons for termination of prior employment."[20] This case does not involve the termination of anyone and is not an employment dispute, it is an insurance dispute, so *Cline* is inapplicable. Further, Mr. Smalley testified that Mr. Snow had nothing to do with the policy at issue in this case. He was not involved, so Plaintiff's numerous bases of relevance to inquire into his termination fail. This includes the attenuated argument that somehow his firing relates to establishing bad faith by Defendant. It strains credulity to posit that someone who was terminated that is not involved in this case goes to the bad faith of Defendant.

Based on the factual record, the court also disagrees with Plaintiff's position that Defendant suspended the deposition to hinder discovery. The court agrees that "whether evidence is relevant is not grounds to terminate a deposition."[21] Yet, Plaintiff's line of questioning regarding the termination of Mr. Snow ran so afoul of relevance and proportionality, especially after learning that he was not involved in the policy at issue here, that it rose to a level of bad faith designed to unreasonably annoy, embarrass, or oppress both Mr. Smalley and

---

[18] 2022 WL 1606519 (D. Utah May 20, 2022).

[19] Pla.'s Op. p. 13.

[20] *Cline*, 2022 WL 1606519, at *2.

[21] *Kingston v. Nelson*, No. 2:04-CV-156, 2008 WL 4221704, at *3 (D. Utah Sept. 15, 2008).

Defendant. As such it was reasonable to terminate the deposition under Federal Rule 30(d)(3) and seek court intervention. Thus, Defendant is entitled to relief under Federal Rule 30 limiting the line of questioning regarding the termination of Mr. Snow, and any other employees of Defendant that had nothing to do with the insurance policy. Clearly there is much common ground for relevant discovery as expressed by both parties and the resumed deposition of Mr. Smalley should focus on those issues. Delving into the reasons for terminating an employee who was not involved in the decision-making process, or the insurance policy, has gone too far afield and is improper under the Federal Rules.[22]

## ORDER

For the foregoing reasons Plaintiff's Motion is Denied and Defendant's Motion is Granted. The court awards no fees or enters no sanctions for either party on account of the negative conduct of both counsel at the deposition.

IT IS SO ORDERED.

DATED this 12 June 2024.

_____
Dustin B. Pead
United States Magistrate Judge

---

[22] *See, e.g., Pittsburgh Plate Glass Co v. Allied Chem. Alkali Workers of Am., Loc. Union No. 1*, 11 F.R.D. 518, 518 (N.D. Ohio 1951) (limiting deposition questions that had run "too far afield"); *Grady v. Jefferson Cnty. Bd Of Cnty. Comm'rs*, No. 07-CV-01191-WDM-, 2008 WL 619219, at *4 (D. Colo. Mar. 3, 2008) (finding certain questions about "personal experiences" annoying, embarrassing, and oppressive);