IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COTTONWOOD ACRES, LLC, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation,<br><br>Defendant. | **ORDER AND MEMORANDUM DECISION DENYING PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.: 2:22-cv-00680-TC-DBP<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff Cottonwood Acres, LLC (Cottonwood Acres) has filed a motion for partial summary judgment (ECF No. 73), in which it asks the court to grant summary judgment on the Fifteenth Affirmative Defense raised by Defendant First American Title Insurance Company (First American). In that defense, First American asserts that its contractual obligation to insure and indemnify Cottonwood Acres for the loss of a disputed property title was excused because Cottonwood Acres made misrepresentations when obtaining the title insurance policy at issue. (Def's. Answer to Am. Compl., ECF No. 43 at 13.) Cottonwood Acres maintains that because the title insurance company had full knowledge of the facts surrounding the property title, First American has failed to establish the necessary elements of this affirmative defense. The court is not persuaded and, for the following reasons, denies the motion for partial summary judgment.

## BACKGROUND

### I.     The Underlying Lawsuit

Before December 1, 2021, the real property at issue here (the Property) was co-owned by Capital Dynamics, LLC (Capital Dynamics), the 10% owner, and the Church of the Will of God (the Church), the 90% owner. (See ECF No. 73 at 3; Dep. P. Robert Augason, 116:11–18, 19:16–

19, ECF No. 31-1.)  The Property was originally made up of five parcels, three of which were owned by the Church and two by Capital Dynamics.  (Am. Compl., Augason v. Church of the Will of God, et al., No. 210901557 (Third Judicial District Court Litigation), ECF No. 2-1 at ¶ 6.)  Robert Augason was, at all relevant times, the sole member of and doing business as Capital Dynamics.  (Utah Business Search Results, ECF No. 73-2.)

Due to its heavily trafficked location at the mouth of Big Cottonwood Canyon, the Property has been the subject of vandalism, litter, and trespass.  (Factual and Legal Findings in Support of Default J., Third Judicial District Court Litigation, ECF No. 31-2 at 2–3.)  As a result, Capital Dynamics has faced threats of eminent domain from the City of Cottonwood Heights.

Unable to get in touch with the Church for financial assistance to deal with the trespassing and eminent domain issues, Mr. Augason sought declaratory relief naming him a Trustee of the Church so that he could manage the Property unilaterally.  On March 22, 2021, Mr. Augason filed suit in his personal capacity against the Church in the Third Judicial District Court for Salt Lake County, alleging that the Church had failed to protect the land against trespassers and pay its share of property taxes and other expenses.  (Compl., Third Judicial District Court Litigation, ECF No. 73-5.)  The Church did not answer Mr. Augason's complaint or otherwise appear in the Third Judicial District Court Litigation at that juncture.  (ECF No. 38 at ¶ 9.)  Indeed, Mr. Augason repeatedly tried and failed to serve the Church's registered agents and Trustees through certified mail.  (Id.)

Following service of the summons and complaint on the Church via a court-authorized publication (ECF Nos. 73-5 to 73-8), Mr. Augason filed a Motion for Default Judgment on September 3, 2021.  (ECF No. 73-8.)  On September 22, 2023, the Third Judicial District Court

entered Findings of Fact and Conclusions of Law in Support of Default Judgment. (ECF No. 31-2.) The Third Judicial District Court granted Mr. Augason's motion and issued its Default Judgment and Order on September 23, 2021, vesting Mr. Augason with authority as Trustee to conduct four activities regarding the Property:

> Specifically, the Court finds and concludes that Plaintiff P. Robert Augason should be named Trustee of Defendant Church of the Will of God in order to: Name a new Registered Agent and satisfy all other corporate formalities to shield Defendant against being administratively dissolved by the Division of Corporations; Provide an accurate, active Utah Resident Agent address at which Defendant may be served notice of any eminent domain, adverse possession or other proceedings involving the Property; Protect their shared Property against the individuals and entities seeking to physically and legally encroach upon them; and Provide an effective, joint response to the litigation regarding the Property which may be on the horizon.

(Id.)

## II. The First American Title Insurance Policy

Once he was appointed as the Trustee of the Church, Mr. Augason sought to consolidate the five parcels and transfer the Property from the Church and Capital Dynamics, the previous owners, to a newly formed entity which he owned in full, Cottonwood Acres. (ECF No. 38 at ¶ 13.) After Mr. Augason discussed the consolidation and transfer with Mr. Boggess, his counsel in the Third Judicial District Court action, Cottonwood Acres applied for a title insurance policy with First American, a title company, and sought their assistance in combining the parcels into one and transferring the deeds. (Decl. P. Robert Augason ¶ 8, ECF No. 25-1.) Throughout the title insurance application process, Cottonwood Acres worked with two First American escrow agents: Greg Smalley and Catherine Augason, who is Mr. Augason's sister. First American was aware at the time it issued the Policy that Catherine Augason was Mr. Augason's sister. (Def's. Opp. Mot. Sum. J., ECF No. 76 at 8.)

In the process of obtaining the Policy from First American, Cottonwood Acres made clear to Mr. Smalley that Mr. Augason was the principal behind both Church of the Will of God and Capital Dynamics, and that Mr. Augason sought to transfer deed (and, in the process, combine the land parcels) to his new entity, Cottonwood Acres, which he owned in full. (Email, Nov. 15, 2021, ECF No. 73-10.) Cottonwood Acres also sent First American some relevant information about the property, including a copy of the Third Judicial District Court's Default Judgment, making First American aware of the action, the scope of Mr. Augason's interest in the Property, and how he had gained the position of Trustee for the Church. (Def's. Interrogatory Resp., ECF No. 73-9.) Before issuing the Policy and facilitating the transfer, First American reviewed these materials and "conducted a public records search to identify and remedy, if possible, any issues or 'clouds' that could affect the policy." (Id. at 9.)

After conducting its review, First American issued Cottonwood Acres a "title commitment" on the Property on September 29, 2021, a document typically created before title insurance is issued as a part of the due diligence process, outlining First American's standard conditions for issuing title insurance on the Property. (ECF No. 73-1.)

On November 18, 2021, after the title commitment had been signed but before First American had issued the Policy, the Church emailed counsel for Mr. Augason, informing him that the Church intended to file a motion to set aside the Third Judicial District Court's Default Judgment. (Church's Answer & Countercl., ECF No. 73-26 at 8.) Neither Mr. Augason nor his counsel responded, nor did they inform First American that Mr. Augason had received a threat of litigation regarding Mr. Augason's status and conduct as Trustee of the Property. (Id.) Notwithstanding the cloud of litigation risk, on December 1, 2021, Cottonwood Acres officially

obtained the Policy, paying First American $6,194.  (Policy, ECF No. 73-18 at 1.)  The Policy provides that First American:

> is obligated to indemnify Cottonwood for loss or damage "sustained or incurred [by Cottonwood] by reason of ... any defect in or lien or encumbrance on the Title."  This "includes but is not limited to" a defect in the title caused by "a defective judicial or administrative proceeding," or by the "failure of any person or Entity to have authorized a transfer or conveyance."

(Id. at 1.)  Further, First American committed to indemnify Cottonwood Acres for any loss or damage sustained by Cottonwood due to "title being vested other than as stated in Schedule A."  (Id.)  Schedule A says that fee simple title in the Property would vest in Cottonwood Acres.  (Id. at 6.)  The Policy also requires First American to, "at its own cost and without unreasonable delay" cover Cottonwood Acres's expenses in "litigation in which any third party asserts a claim covered by this policy adverse to [Cottonwood Acres]."  (Id. at 3.)

Also on December 1, 2021, Mr. Augason consolidated all five parcels into one and then conveyed the Property in whole to Cottonwood Acres, representing to First American that Cottonwood Acres was the buyer.  (Special Warranty Deed, ECF No. 73-21; Quitclaim Deed, ECF No. 73-22.)  As part of the sale, Mr. Augason and First American jointly valued the Property at around $2,000,000, as the parties indicated on their settlement statement.  (Settlement Statement, ECF No. 73-14.)  The documents accompanying the transfer indicate that Cottonwood Acres promised to pay $10 and other valuable consideration to the Church in exchange for its share of the Property, and that Cottonwood Acres would pay the Church and Capital Dynamics in cash, rather than through an escrow service (id.), consistent with First American's internal communications discussing how First American would not be "handling the transfer of any money" and therefore "shouldn't need to collect for any escrow fees."  (Email, Nov. 23, 2021, ECF No. 73-13.)  Despite these promises, Cottonwood Acres never actually paid any consideration to the Church for its share of the Property.  (ECF No. 31-1 at 174:1–9.)

On December 13, 2021, after issuing the Policy and facilitating the Property transfer and consolidation, First American internally flagged the Cottonwood Acres Policy as a "high liability" matter. (High Liability Approval Form, ECF No. 73-23.)

### III. The Third Judicial District Court Sets Aside the Default Judgment

On December 16, 2021, two weeks after Cottonwood Acres had obtained the Policy and deed to the Property, the Church, following up on its threat of litigation, moved to set aside the Third Judicial District Court's Default Judgment on the basis that its due process notice rights had been violated. (ECF No. 73-24.) Mr. Augason did not oppose the motion, and the Third Judicial District Court granted the Church's motion on January 7, 2021, ordering that "[a]ny action that Plaintiff P. Robert Augason took as Trustee of the Church is hereby deemed NULL and VOID, including the Special Warranty Deed he signed." (Order to Set Aside Default Judgment, ECF No. 73-25.)

### IV. Cottonwood Acres's Claim For Defense

On January 19, 2022, the Church and its Trustee, Clint Walker, filed claims against Mr. Augason for unjust enrichment and the imposition of a constructive trust on the Property. (ECF No. 73-26 at 9–10; ECF No. 76 at 21.) On January 31, 2022, Cottonwood Acres submitted to First American a claim for defense against the Church's Counterclaims. (Owner Claim Submittal Form, ECF No. 73-27.) Discussing the claim internally, First American noted "a few concerns with the way the transaction was underwritten," including (1) First American's reliance on the Default Judgment issued without personal service, (2) the nature of the order appointing a co-owner as Trustee of the other co-owner's entity, (3) the familial relationship between Robert and Catherine Augason, (4) that Augason was on both sides of the buyer-seller relationship, and (5) that the sales proceeds were paid outside of escrow directly from buyer to seller. (See Email,

Feb. 16, 2021, ECF No. 73-40 at 4.)  First American ultimately denied Cottonwood Acres's claim on February 17, 2022.  (Denial of Coverage Letter, Feb. 17, 2022, ECF No. 73-29.)

In its Denial of Coverage Letter to Cottonwood Acres, First American explained its reasoning: First, denial was warranted because the policy excluded from its coverage "[d]efects, liens, encumbrances, adverse claims, or other matters" including those "not Known to the Company ... but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under the Policy[.]"  (Id. at 5.)  Second, First American concluded that Cottonwood Acres was at fault for its losses and/or damages because they would "not have been sustained if the Insured Claimant had paid value for the Title."  (Id. at 5–6.)

Cottonwood Acres reconveyed the Property to the Church on May 6, 2022. (Reconveyance Quit Claim Deed, ECF No. 73-31.)  Cottonwood Acres then made an indemnity claim to First American on August 24, 2022, asking for $2,000,000.  (Demand Letter, Aug. 24, 2022, ECF No. 73-32.)  First American denied Cottonwood Acres's indemnity claim on September 7, 2022, reiterating the substance of its February 17, 2022 Denial of Coverage Letter. (Denial Letter, Sept. 7, 2022, ECF No. 73-35.)

V.   **The Present Litigation and First American's Fifteenth Defense**

Cottonwood Acres sued First American for breach of the Policy and breach of the implied covenant of good faith and fair dealing, amending its complaint for a second time on July 17, 2023.  (ECF No. 38.)  First American responded on July 31, 2023, asserting, among other defenses, its Fifteenth Affirmative Defense, which reads:

> Plaintiff is barred, in whole or in part, from claiming or recovering any relief set forth in the Amended Complaint because Plaintiff may have misrepresented material facts in presenting Plaintiff's claims to Defendant, thereby entitling Defendant to deny coverage from the moment such misrepresentations began.

7

(Def's. Answer to Am. Compl., ECF No. 43 at 13.)

On August 22, 2024, Cottonwood Acres filed a motion for partial summary judgment on First American's Fifteenth Affirmative Defense. (ECF No. 73.) As of October 7, 2024, the date that the present motion was fully briefed, discovery remained ongoing, with fact discovery concluding on October 28, 2024, and expert discovery due February 11, 2025. (ECF No. 72.)[1] The remaining depositions as of October 7, 2024, include Cottonwood Acres's 30(b)(6) witness, First American's 30(b)(6) witness, and several employees of First American involved in the coverage decision-making process, including Marc Webber, First American's Utah State Manager; Beth Schreiber, the individual who handled Cottonwood's claim; and Royce Covington, First American's coverage counsel. (ECF No. 76 at 13, 28–29.)

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden on summary judgment for affirmative defenses still lies with the movant. But "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). Instead,

> a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.

---

[1] Since then, the court has issued a new scheduling order, with expert discovery to conclude on April 26, 2025. (Order Granting Motion for Amended Scheduling Order dated January 21, 2025, ECF No. 81.)

Id.; see also Crandall v. Am. Fam. Mut. Ins. Co., No. 2:11-cv-497-RJS, 2013 WL 5819283, at *2 (D. Utah Oct. 29, 2013) (same).

## ANALYSIS

### I.  Pleading Standards

Cottonwood Acres argues that First American's Affirmative Defense must be dismissed on summary judgment under Rule 9(b) of the Federal Rules of Civil Procedure, which requires heightened, more detailed pleading standards for fraud claims. First American responds that its Fifteenth Affirmative Defense is for misrepresentation, not fraud, and accordingly meets the applicable, more permissive pleading standards of Rule 8(b)(1)(A) of the Federal Rules of Civil Procedure.

At the outset, the court notes that Cottonwood Acres couches this portion of its motion as one for summary judgment, when it is actually requesting, in effect, that the court strike First American's Fifteenth Affirmative Defense. The court will therefore treat the request as a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure. See Wells v. Hi Country Auto Grp., 982 F. Supp. 2d 1261, 1264 (D.N.M. 2013) (treating motion for summary judgment on affirmative defense as a motion to strike and noting that "[c]ourts regularly consider relief requested when determining how to construe a motion, regardless of the actual title of the pleading"); Fed. R. Civ. P. 12(f) ("Courts may strike from a pleading an 'insufficient defense.'").

"A court should proceed with extreme caution in striking a pleading." Colo. Milling & Elevator Co. v. Howbert, 57 F.2d 769, 771 (10th Cir. 1932); see also MRSI Int'l., Inc. v. Bluespan, Inc., No. 2:05-cv-896-DAK, 2006 WL 2711791, at *1 (D. Utah Sept. 21, 2006) ("Motions to strike are not favored and any doubt as to the striking of a matter in a pleading should be resolved in favor of the pleading.").

In examining whether to strike First American's Fifteenth Affirmative Defense, the court applies the pleading requirements set forth under Rule 8(b)(1)(A) of the Federal Rules of Civil Procedure, and not the Rule 9(b) pleading requirements, because (1) First American pleads misrepresentation, not fraud, and (2) First American has brought this claim as an affirmative defense, rather than a claim or counterclaim. Under these standards, the court finds that First American's Fifteenth Affirmative Defense is sufficiently pled and therefore denies Cottonwood Acres's motion to strike on this basis.

Notably, this court has previously examined a nearly identical affirmative defense to First American's and determined that the defense was sufficient because it fulfilled the Rule 8 standard requiring only a "state[ment] in short and plain terms." Macbean v. Farmers New World Life Ins. Co., No. 2:17-cv-00131-DN, 2018 WL 2943257, at *11 (D. Utah June 12, 2018) (citations omitted). Specifically, defendant Farmers New World Life Insurance Co. raised an affirmative defense to a breach of contract claim on the basis that the plaintiff had made misrepresentations in its application for a life insurance policy. The defendant's affirmative defense set forth only that "[Macbean's] claims should be barred where [Macbean] or any other insured has made or caused to be made, false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under the policy." Compare id. at *10, with Def's. Answer to Am. Compl., ECF No. 43 at 13. This court, recognizing the sufficiency of the affirmative defense's plain statement, declined to apply the Rule 9(b) pleading standards, because a "[m]isrepresentation in the Utah insurance context is a statutory defense independent from fraud and not enumerated in the list of defenses that must be plead[ed] with particularity under subject [sic] to the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Macbean, 2018 WL 2943257, at *6.

The Tenth Circuit in Macbean further held that "Rule 8(c)'s ultimate purpose is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate," and found that the defendant's affirmative defense was sufficient to provide plaintiffs with notice of the issues—even if the defense fell short of the Rule 8 pleading standards—because the insurer had provided the insured with additional information about the misstatements in a denial of coverage letter.  See id. (concluding that affirmative defense poses "no surprise" where the insurer provided the insured with "fair notice" by virtue of its denial of coverage letter).  Indeed, this court has invariably recognized that "[a]ffirmative defenses not listed in Rule 9(b) are subject to a lesser pleading standard than required for pleading an affirmative claim in a complaint." Id. at *6 (discussing Bell Atl. Corp. v. Tombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and declining to apply complaint pleading standards to defendant's affirmative defenses); see also Tiscareno v. Frasier, No. 2:07-cv-00336-CW, 2012 WL 1377886, at *14–16 (D. Utah April 19, 2012) ("Rule 8 does not compel courts to apply the same pleading standard to both complaints and affirmative defenses pled in responsive pleadings."); Sexton v. Evergreen Vill. Cmty. MHC, LLC, No. 2:19-cv-00675-CW-JCB, 2020 WL 7038501, at *1 (D. Utah July 20, 2020) (same).

Because First American's Fifteenth Defense alleges misrepresentation, not fraud, First American needed only set forth a "short plain" statement of its affirmative defense.  It has met this burden.  Further, First American's Denial of Coverage Letter provided Cottonwood Acres with more detail, "inform[ing] [Cottonwood Acres] that its denial was based upon a misrepresentation, which had [First American] been aware of, [First American] would not have issued [the] policy."  Macbean, 2018 WL 2943257, at *6; (see Denial of Coverage Letter 3–5 ("Cottonwood failed to give value to the Church in exchange for the Property …. Given Mr.

Augason's position as a member and manager of Cottonwood, Cottonwood had knowledge of the facts forming the basis of the Counterclaim but failed to disclose those wrongful acts and improprieties to First American.").).

Cottonwood Acres seeks to distinguish Macbean on the basis that it involved "representations made on written life insurance applications," whereas title insurance "does not involve a written application." (Def's. Reply Mot., ECF No. 77 at 18.) In other words, Cottonwood Acres argues that there is a higher pleading burden in misrepresentation cases involving free-form insurance policy application processes as opposed to those involving fill-in-the-blank style applications. But the court is unpersuaded by this distinction. Even though Cottonwood Acres's misstatements were not part of a "fill in the blank" style application, the materials Cottonwood Acres sent and the statements Mr. Augason made to escrow agents at First American were no less material to his title insurance approval than if they had been submitted alongside a fill-in-the-blank application. See, e.g., DiTucci v. Ashby, No. 2:19-cv-277-TC-JCB, 2021 WL 778579, at *7 (D. Utah Mar. 1, 2021) (recognizing that the process of obtaining title insurance involves an application process), aff'd, 2023 WL 382923 (10th Cir. Jan. 25, 2023).

Regardless of the application's format, First American could have rejected Cottonwood Acres's application based on these materials and representations (or lack thereof). Indeed, Cottonwood Acres separately argues that First American waived any right to refuse insurance coverage on the basis of Mr. Augason's limited rights as the Church's Trustee because Mr. Augason had provided First American with a copy of the Third Judicial District Court's Default Judgment when he was applying for the policy. (ECF No. 73 at 16–17.) This argument suggests that Cottonwood Acres viewed its submissions and statements to First American to be part of his application for insurance.

In sum, an application for insurance must be accurate regardless of whether the insured seeks to obtain insurance through a fill-in-the-blank or a free-form application.

Further, this court's holding in Macbean applies broadly to misstatements made while obtaining any sort of insurance because it relies on Utah Code Ann. § 31A-21-105, a statute which, by its own terms, applies to all types of insurance policy application processes, not just life insurance. See id. ("[N]o statement, representation, or warranty made by any person representing the insurer in the negotiation for an individual or franchise insurance contract affects the insurer's obligations under the policy unless it is stated in the policy or in a written application signed by the applicant."). Unsurprisingly, the Tenth Circuit has applied the Utah Code standards governing misrepresentations and omissions made in the insurance policy application process beyond the context of life insurance policies. See ClearOne Commc'ns, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 494 F.3d 1238, 1241 (10th Cir. 2007) (applying Utah Code Ann. § 31A-21-105 to application for liability insurance policy and finding misstatements contained in financial statements submitted during the underwriting process qualified for purposes of rescission because they were "incorporated into the application" by reference); see also Wisconsin Mortg. Assurance Corp. v. HMC Mortg. Corp., 712 F. Supp. 878 (D. Utah 1989) (under an earlier iteration of Utah Code Ann. § 31A-21-105, a mortgage insurer was entitled to rescind policy based on misrepresentations in application).

In sum, First American has adequately pled its Fifteenth Affirmative Defense under the governing standards, and the court denies Cottonwood Acres's motion to strike.

## II. Issues of Fact Regarding Plaintiff's Misrepresentations or Omissions

The court next turns to the issue on summary judgment: Whether the evidentiary record raises a genuine issue of fact regarding First American's obligation to insure Cottonwood Acres

under the Utah Code. Utah Code Ann. § 31A-21-105 states that "no misrepresentation or breach of an affirmative warranty affects the insurer's obligations under the policy unless: (a) the insurer relies on it and it is either material or is made with intent to deceive; or (b) the fact misrepresented or falsely warranted contributes to the loss." Utah Code Ann. § 31A-21-105. "The three statutory alternatives [in § 31A-21-105(2)] are stated in the disjunctive, not the conjunctive" and therefore, "[i]n order to invalidate a policy because of a misrepresentation by the insured, an insurer need prove applicable only one of the above provisions." Derbidge v. Mut. Protective Ins. Co., 963 P.2d 788, 790 (Utah Ct. App. 1998) (citing Berger v. Minn. Mut. Life Ins. Co., 723 P.2d 388, 390 (Utah 1986)); see also Travelers Cas. & Sur. Co. of Am. v. Grimmer Davis Revelli & Ballif, P.C., No. 2:19-cv-597-DAK-JCB, 2021 WL 5234373, at *4 (D. Utah Nov. 10, 2021) ("Courts applying this statute have held that an insurer may rescind a policy where (1) the insurer relies on a material misrepresentation made by the applicant; (2) the insurer relies on a misrepresentation that was made by the applicant with the intent to deceive; or (3) the applicant's misrepresentation contributes to the loss.") (cleaned up). To demonstrate a misrepresentation to rescind coverage under § 31A-21-105(2), the record need not demonstrate the insured had an intent to deceive, but rather that "the applicant kn[ew] or should have known about a misstatement in the application and still present[ed] it to the insurer." PHL Variable Ins. Co. v. Sheldon Hathaway Family Ins. Tr., 819 F.3d 1283, 1289 (10th Cir. 2016) (quoting ClearOne Commc'ns, Inc., 494 F.3d at 1247–48).

      The court finds the record raises genuine factual issues about whether Cottonwood Acres misrepresented to First America that it would pay the Church, whether Cottonwood Acres knew about, intended, or was aware of its misrepresentation, whether the misrepresentation was material—in other words, whether First America would not have issued the policy had it known

14

the truth—, and whether Cottonwood Acres's actions contributed to its loss of title. Accordingly, summary judgment is inappropriate under each of the statutory alternatives set forth in Utah Code Ann. § 31A-21-105.

### A. Material Misrepresentation

Cottonwood Acres argues that the Fifteenth Affirmative Defense must be dismissed because First American knew—before issuing the Policy—that Cottonwood Acres was not going to pay the Church in exchange for the Property title regardless of Cottonwood Acres's misrepresentations otherwise. (ECF No. 73 at 15–21.) In other words, Cottonwood Acres contends it made no meaningful misrepresentation regarding the consideration it would pay. First American asserts that the evidence upon which Cottonwood Acres relies demonstrates just the opposite: Cottonwood Acres consistently represented itself as a "buyer" that would pay the Church money for its stake in the Property without the need for First American's escrow services on the transaction. (ECF No. 76 at 16–17.)

Cottonwood Acres principally rests its motion for summary judgment on an internal First American email in which Greg Smalley, an escrow agent at First American, said to a colleague that "[s]ince we aren't handling the transfer of money, [First American] shouldn't need to collect for any escrow fees." (See ECF No. 73 at 6 n.20 (citing ECF No. 73-13).) Cottonwood Acres argues that Mr. Smalley's email shows that First American knew the transaction would be completed without an exchange of consideration. Id. at 17 ("Before issuing the Policy, FATCO knew that Cottonwood was paying no cash for transfer of the Property."). But a reasonable jury could find this correspondence more credibly shows that First American was under the impression that there would be a transfer of funds, and that Cottonwood Acres was paying the Church for the Property in cash, rather than through an escrow arrangement. Additional

15

evidence supports this interpretation of Mr. Smalley's email exchange.  For example, First American consistently referred to Cottonwood Acres as a buyer.  (First American Settlement Statement, ECF No. 14 (referring to Cottonwood Acres as the "buyer").)  And multiple documents accompanying First American's transfer of the deed specify that Cottonwood Acres would pay money, along with "other valuable consideration," to the Church.  (See, e.g., id. (noting that "[b]uyer paid [credit] directly to seller"); ECF No. 73-21 (stating property sold "for the sum of Ten Dollars and other good and valuable consideration"); ECF No. 73-22 (same).)  The court finds a genuine issue of fact regarding Cottonwood Acres's representations and First American's knowledge regarding the actual terms of the Property transfer.

First American's Fifteenth Affirmative Defense also overcomes summary judgment because there are triable issues of fact regarding whether Mr. Augason misrepresented his rights as the Church's Trustee to convey the Property to himself.  (ECF No. 76 at 27–28.)[2]  On the one hand, Cottonwood Acres provided First American with a copy of the Third Judicial District Court's Default Judgment and Findings of Fact prior to First American's issuance of the Policy.  These documents show the limited scope of Mr. Augason's powers as the Church's Trustee.  Accordingly, a jury could find that First American knew or should have known when it issued the Policy that Mr. Augason's rights as Trustee were tenuous, established through a vulnerable Default Judgment issued without personal service.  On the other hand, a reasonable jury could also conclude that Cottonwood Acres knew before it obtained the Policy—and therefore should have disclosed—that the Church would be seeking to overturn the Default Judgment and reclaim its title, meaning Mr. Augason's rights as Trustee were even weaker than Cottonwood Acres

---

[2] Cottonwood Acres disputes that his right as Trustee to convey the property to himself was limited by the Third Judicial District's Default Judgment.

16

initially represented. E.g., Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 547 F.3d 15, 22 (1st Cir. 2008) (affirming holding that insurance policy was null and void due to material misrepresentations because "[a] prospective insured cannot select and present only favorable information on a subject and delete less favorable information on the same point, even if no follow up questions are asked"). While the Church informed Mr. Boggess and not Mr. Augason about its plan to challenge the Third Judicial District's Default Judgment (ECF No. 73-26 at 8), Mr. Augason has contended that everything he did to consolidate and sell the Church's Property to Cottonwood Acres was on the advice of counsel (ECF No. 73 at 4). A jury may therefore find it plausible that Mr. Augason was aware of the Church's impending legal challenge when Cottonwood Acres effectively conveyed the Property to itself for free.

### B.  Reliance

The court next examines whether there is a question of fact regarding First American's reliance on Cottonwood Acres's misrepresentations. The court finds that a jury could reasonably conclude that the exchange of consideration between buyer and seller is a basic tenet of property sales, and that a title insurance company would only agree to insure a company's acquisition of property title upon confirmation that basic conditions of a sale—ones that were specifically listed as fulfilled in the transfer of title documents—were adhered to, thereby negating the insurer's risk. See Travelers Cas. & Sur. Co. of Am., 2021 WL 5234373, at *7 (finding the insurer had relied on insured's misstatements in issuing a policy because the truth would "naturally influence the insurer's judgment in making the contract" in that it affected reasonable "estimat[ion of] the degree or character of the risk, or in fixing the rate of insurance") (citing Fidelity & Cas. Co. v. Middlemiss, 135 P.2d 275, 279 (Utah 1943)). In any event, as of the parties' submissions on this motion, Cottonwood Acres had yet to depose First American's 30(b)(6) witness, Mark Webber

(First American's Utah manager), Beth Schreiber (the individual who handled Cottonwood's insurance claim), and Royce Covington (coverage counsel), witnesses whose testimony might conceivably bear on this question. (See ECF No. 76 at 28–29.) Accordingly, the court finds that there are triable issues of fact regarding First American's reliance on Cottonwood Acres's alleged misrepresentations.

### C. Knowing or Intentional Misrepresentation

Accepting First American's version of the facts as true, a reasonable juror could also find that Cottonwood Acres knowingly or intentionally misrepresented the consideration it would pay the Church, an independent basis under the Utah Code for rescinding an insurance contract. Mr. Boggess, former counsel for Mr. Augason in the Third Judicial District Court case, testified that he informed Mr. Augason that it would be very "risky" to convey the property to himself without paying consideration because it would constitute a breach of his fiduciary duty to the Church. (See Dep. Brian Boggess, 56:23–59:13, ECF No. 76-1.) Accepting this testimony as true, Cottonwood Acres apparently acted against Mr. Boggess's legal advice by going forward with the transfer without giving consideration but stating otherwise in the transaction documents. (Id.) A reasonable jury could find that Mr. Augason's break from his counsel's advice about his fiduciary obligations to the Church indicates intentional, knowing misconduct. See Travelers Cas. & Sur. Co. of Am, 2021 WL 5234373, at *5 (finding the insured was aware he had made misrepresentations where he had already received legal threats about his right to proceed when he signed the insurance policy, noting that "intent to deceive can be inferred from circumstantial evidence") (citing Republic Grp., Inc. v. Won-Door Corp., 883 P.2d 285, 293 n.7 (Utah Ct. App. 1994)). Although Cottonwood Acres disputes the truth of Mr. Boggess's testimony, contending that Mr. Boggess instead advised Mr. Augason to transfer the property to Cottonwood Acres, Mr.

Augason has conceded that there is no written evidence directly supporting Cottonwood Acres's version of events.  (ECF No. 38 at 166:18–167:5.)  Mr. Boggess's credibility is an issue of fact that must be evaluated by a jury.  E.g., Fogarty v. Gallegos, 523 F.3d 1147, 1166 (10th Cir. 2008) ("[T]he court may not grant summary judgment based on its own perception that one witness is more credible than another; these determinations must be left for the jury."); Janny v. Gamez, 8 F.4th 883, 901 (10th Cir. 2021) (finding even "self-serving testimony can suffice to prevent summary judgment" so long as it is not "blatantly contradicted by the record"); Johnson v. Salt Lake City Sch. Dist., No. 2:19-cv-743-JNP-DAO, 2021 WL 4895241, at *11 (D. Utah Oct. 20, 2021) (denying summary judgment because "[t]he court refuses to act as the jury by determining witness credibility or choosing between competing inferences").

### D. Contribution to the Loss

Finally, there is a genuine issue of fact about whether Cottonwood Acres's failure to pay consideration contributed to its loss of title and need for indemnification in the Third Judicial District Court action on the Church's counterclaims—another valid basis on which First American could deny Policy coverage.  The Church's counterclaims for unjust enrichment are rooted in Cottonwood Acres's failure to compensate the Church fully for the Property.  (See ECF No. 73-26 at ¶¶ 17–27.)  Accordingly, a jury could reasonably find that Cottonwood Acres may have ultimately retained its title over the Property had it paid the Church consideration.

In sum, the record demonstrates triable issues of fact about whether Cottonwood Acres knowingly or inadvertently misrepresented the terms of sale or Mr. Augason's powers as Trustee, whether First American relied upon those misrepresentations in issuing the policy, and whether Cottonwood Acres's representations contributed to its ultimate loss of title.  Accordingly, summary judgment is not warranted.

### E. Need for Additional Discovery Under Rule 56(d)

Because the Court finds there are triable issues of fact on the evidentiary record developed so far, the court need not examine whether Defendant's Rule 56(d) request for additional discovery is necessary. See Fed. R. Civ. P. 56(d).

### ORDER

For the foregoing reasons, the court orders as follows:

1. The court DENIES the Plaintiff's Motion for Summary Judgment on Defendant's Fifteenth Defense. (ECF No. 73).

DATED this 23nd day of January 2025.

BY THE COURT:

Tena Campbell
United States District Judge