IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COTTONWOOD ACRES,<br><br>         Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE,<br><br>         Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-cv-00680<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Before the court is the Defendant's motion for summary judgment.  (ECF No. 83.)  For the reasons stated below, the court grants in part and denies in part the Defendant's motion.

**BACKGROUND**

Central to this case is a property located at the mouth of Big Cottonwood Canyon (the Property).  (Factual and Legal Findings in Support of Default J., Augason v. Church of the Will of God, No. 210901557 (Third Judicial District Court Litigation), ECF No. 31-2 at 4.)[1]  Before December 1, 2021, Capital Dynamics, LLC (Capital Dynamics) and the Church of the Will of God (the Church) co-owned the Property.  (Plaintiff's Mot. Summ. J., ECF No. 73 at 3.)  Capital Dynamics owned 10% of the property while the Church owned the other 90%.  (Dep. P. Robert Augason, ECF No. 73-38 at 16:11–18, 19:16–19.)  The Property originally comprised five parcels, three of which the Church owned and two of which Capital Dynamics owned.  (Am.

---

[1] Citations are to PDF exhibit pages, not internal document pages.

1

Compl., Third Judicial District Court Litigation, ECF No. 2-1 at ¶ 6.)  At all relevant times, Robert Augason was the sole member of and doing business as Capital Dynamics.  (See Utah Business Search Results, ECF No. 73-2.)

Due to its highly trafficked location, the Property suffered from vandalism, litter, and trespass.  (ECF No. 31-2 at 4.)  The City of Cottonwood Heights threatened Capital Dynamics with eminent domain.  (Id.)  When Mr. Augason was unable to get in touch with the Church for financial assistance in handling the trespassing and eminent domain issues, he sought declaratory relief naming him a Trustee of the Church so he could unilaterally manage the property.  On March 19, 2021, Mr. Augason filed suit in his personal capacity against the Church in the Third Judicial District for Salt Lake County.  (Compl., Third Judicial District Court Litigation, ECF No. 73-5.)  Mr. Augason alleged that the Church had failed to protect the land against trespassers and pay its share of property taxes and other expenses.  (Id. ¶¶ 15, 18, 34.)  The Church neither answered Mr. Augason's complaint nor appeared in the Third Judicial District Court Litigation at that juncture.  (Second Am. Compl., ECF No. 38 at ¶ 9.)

After service of process of the summons and complaint on the Church through a court-authorized publication (see ECF Nos. 73-6, 73-7), Mr. Augason filed a motion for default judgment (ECF No. 73-8).  The Third Judicial District Court entered findings of fact and conclusions of law in support of default judgment on September 22, 2021.  (ECF No. 31-2.)  The day after, the court issued a Default Judgment declaring Mr. Augason Trustee of the Church and vesting him with "all rights, powers, duties, and obligations of a Trustee for a Corporation Sole." (ECF No. 73-9 at 3.)

After becoming Trustee of the Church, Mr. Augason conveyed the land to Cottonwood Acres, a new entity which he fully owned.  (Second Am. Compl. ¶¶ 1, 13.)  Mr. Augason

2

consulted with his attorney, Brian D. Boggess, and Cottonwood Acres then applied for a title insurance policy (the Policy) with First American Title Insurance (First American).  (Decl. P. Robert Augason ¶ 8, ECF No. 25-1.)  On behalf of Cottonwood Acres, Mr. Augason also sought First American's assistance in combining the parcels comprising the property.  (Email from Greg Smalley to Robyn N. Jacob dated Nov. 15, 2021, ECF No. 73-11.)  Two First American escrow agents assisted Cottonwood Acres throughout the application process: Greg Smalley and Catherine Augason.  (ECF No. 76 at 8.)  Catherine Augason is Mr. Augason's sister, which First American knew at the time it issued the Policy.  (Id.)

Cottonwood Acres made it clear to Mr. Smalley that Mr. Augason was the principal behind both the Church and Capital Dynamics.  (ECF No. 73-11.)  Mr. Smalley was also aware that Mr. Augason sought to combine land parcels and transfer deed to Cottonwood Acres.  (Id.)  Additionally, Cottonwood Acres sent First American a copy of the Third Judicial District Court's Default Judgment.  (ECF No. 73-9.)  Prior to issuing the Policy, First American reviewed these materials and "conducted a public records search to identify and remedy, if possible, any issues or 'clouds' that could affect the policy."  (ECF No. 73-10 at 10.)

On September 29, 2021, First American issued Cottonwood Acres a "title commitment" on the Property.  (See ECF No. 73-1; Second Am. Compl. ¶ 14.)  But on November 18, 2021, before First American issued the Policy, the Church emailed Mr. Augason's counsel that the Church intended to file a motion to set aside the Third Judicial District Court's Default Judgment.  (Church's Answer & Countercl., ECF No. 73-26 at 9.)  Neither Mr. Augason nor his counsel responded.  (Id.)

On December 1, 2021, First American issued the Policy to Cottonwood Acres.  (ECF No. 73-18.)  The Policy states that First American

is obligated to indemnify Cottonwood for loss or damage "sustained or incurred [by Cottonwood] by reason of ... any defect in or lien or encumbrance on the Title." This "includes but is not limited to" a defect in the title caused by "a defective judicial or administrative proceeding," or by the "failure of any person or Entity to have authorized a transfer or conveyance."

(ECF NO. 73 at 7 (quoting ECF No. 73-18 at 2).)  Under the Policy, First American also committed to indemnifying Cottonwood Acres for any loss or damage sustained by Cottonwood Acres due to "title being vested other than as stated in Schedule A."  (ECF No. 73-18 at 2.) Schedule A says that fee simple title in the Property would vest in Cottonwood Acres.  (Id. at 7.) The Policy also requires First American to, "at its own cost and without unreasonable delay[,]" cover Cottonwood Acres's expenses in "litigation in which any third party asserts a claim covered by this policy adverse to [Cottonwood Acres]."  (Id. at 4.)

The Policy lists matters that are "expressly excluded from the coverage of this policy" (the Exclusions) and explains that "the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of" those matters.  (Id. at 3.)  Exclusion 3 lists:

> Defects, liens, encumbrances, adverse claims, or other matters
> (a) created, suffered, assumed, or agreed to by the Insured Claimant;
> (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; … or
> (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

(Id.)

Also on December 1, 2021, Mr. Augason consolidated the parcels and conveyed the Property to Cottonwood Acres.  (See ECF Nos. 73-21, 73-22.)  Mr. Augason and First American jointly valued the Property at around $2,000,000.  (ECF No. 73-14.)  Cottonwood Acres promised to pay $10 in cash (rather than through an escrow service) and other valuable consideration to the Church in exchange for its share of the Property.  (Id.)  But Cottonwood

4

Acres never actually paid any consideration to the Church for its share of the Property. (Augason Dep. at 174:1–9.)  On December 13, 2021, First American internally flagged the Policy as a "high liability" matter.  (See ECF No. 73-23.)

On December 16, 2021, the Church moved to set aside the Third Judicial District Court's Default Judgment on the basis that its due process notice rights were violated.  (ECF No. 73-24.) After Mr. Augason did not oppose the motion, the Third Judicial District Court granted the Church's motion on January 7, 2022.  (Order to Set Aside Default Judgment, ECF No. 73-25.) The Third Judicial District Court ordered that "[a]ny action that Plaintiff P. Robert Augason took as Trustee of the Church is hereby deemed NULL and VOID, including the Special Warranty Deed he signed." (Id. at 3.)

The Church and its Trustee, Clint Walker, filed claims against Mr. Augason for unjust enrichment and the imposition of a constructive trust on the Property on January 19, 2022.  (ECF No. 73-26 at 9–10.)  On January 31, 2022, Cottonwood Acres submitted to First American a claim for defense against the Church's counterclaims.  (ECF No. 73-27.)  Discussing the claim internally, First American noted "a few concerns with the way the transaction was underwritten," including 1) First American's reliance on the Default Judgment issued without personal service; 2) the nature of the order appointing a co-owner as Trustee of the other co-owner's entity; 3) the familial relationship between Robert and Catherine Augason; 4) that Augason was on both sides of the buyer-seller relationship; and 5) that the sales proceeds were paid outside of escrow directly from buyer to seller.  (See Email from Nathan Sprague to Mark Webber dated Feb. 16, 2022, ECF No. 73-40 at 3–4.)

On February 17, 2022, Beth Schrieber, the Vice President and Senior Claims Counsel for First American, sent a letter from First American to Cottonwood Acres denying Cottonwood

Acres's claim (the Denial Letter).  (See Denial Letter, ECF No. 73-29.)  In the Denial Letter, Ms. Schreiber explained that the Church's counterclaims "appear to affect title to the Property," but that the counterclaims "fall within the exclusionary language of the Policy."  (Id. at 4.)  Ms. Schreiber quoted Exclusions 3(a), (b), and (e) in support.

On May 6, 2022, Cottonwood Acres reconveyed the Property to the Church.  (ECF No. 73-31.)  Then, on August 24, 2022, Cottonwood Acres made an indemnity claim to First American for $2,000,000.  (ECF No. 73-32.)  First American denied Cottonwood Acres's indemnity claim on September 7, 2022, reiterating the substance of its February 17, 2022 Denial Letter.  (ECF No. 38-1.)

Cottonwood Acres sued First American for breach of the Policy and breach of the implied covenant of good faith and fair dealing, amending its complaint for a second time on July 17, 2023.  (Second Am. Compl.)  On July 31, 2023, First American responded and asserted sixteen defenses.  (See ECF No. 43.)  Cottonwood Acres filed a motion for partial summary judgment on First American's Fifteenth Affirmative Defense on August 22, 2024.  (ECF No. 73).  The Fifteenth Affirmative Defense reads:

> Plaintiff is barred, in whole or in part, from claiming or recovering any relief set forth in the Amended Complaint because Plaintiff may have misrepresented material facts in presenting Plaintiff's claims to Defendant, thereby entitling Defendant to deny coverage from the moment such misrepresentations began.

(ECF No. 43.)  Discovery remained ongoing at the time.

On January 23, 2025, the court issued an order and memorandum decision denying the motion for summary judgment on Defendant's Fifteenth Affirmative Defense.  (ECF No. 82.)  The court denied summary judgment because

> the record demonstrates triable issues of fact about whether Cottonwood Acres knowingly or inadvertently misrepresented the terms of sale or Mr. Augason's powers as Trustee, whether First American relied upon those misrepresentations

in issuing the policy, and whether Cottonwood Acres's representations contributed to its ultimate loss of title.

(Id. at 19.)

On May 30, 2025, First American filed a motion for summary judgment against all of Cottonwood Acres's claims.  (ECF No. 83.)

## LEGAL STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that might affect the outcome of the case.  Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015) (citation omitted).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  GeoMetWatch Corp. v. Behunin, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In applying this standard, the court must "view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  Ellis v. Salt Lake City Corp., 147 F.4th 1206, 1219 (10th Cir. 2025) (quoting Sawyers v. Norton, 962 F.3d 1270, 1282 (10th Cir. 2020)).

Once the movant shows there is an "absence of a genuine issue of material fact[,]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted).  "[W]hile [courts] draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere

possibility.'"  GeoMetWatch Corp., 38 F.4th at 1200 (quoting Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A., 858 F.3d 1324, 1334 (10th Cir. 2017)).

## ANALYSIS

### I.     Breach of Contract

"Under Utah law, insurance contracts are to be interpreted using the same rules applied to interpreting ordinary contracts."  Dyno Nobel v. Steadfast Ins. Co., 85 F.4th 1018, 1026 (10th Cir. 2023) (citation omitted).  And "Utah courts also construe insurance contracts by considering their meaning to a person of ordinary intelligence and understanding."  Id. (citation modified). "An insurer may 'exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'"  Awadh v. Farm Bureau Mut. Ins. Co., No. 1:13-cv-145-DAK, 2016 WL 3920177, at *4 (D. Utah July 18, 2016), aff'd, 687 F. App'x 735 (10th Cir. 2017) (quoting Alf v. State Farm Fire & Cas. Co., 850 P.2 1272, 1275 (Utah 1993)).

The Policy lists matters that are "expressly excluded from the coverage of this policy" and explains that "the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of" those matters.  (ECF No. 73-18 at 3.)  The relevant sections of Exclusion 3 include:

> Defects, liens, encumbrances, adverse claims, or other matters
>     (a) created, suffered, assumed, or agreed to by the Insured Claimant;
>     (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; … or
>     (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

(Id.)

The Defendant argues that the court can grant summary judgment based on Exclusions 3(a), (b), or (e), and particularly emphasizes Exclusion 3(e).  The court finds that there are genuine factual issues related to Exclusions 3(a), (b), and (e) and accordingly declines to grant summary judgment.

### A.   Whether Cottonwood Acres's Failure to Pay Value Caused the Loss of Title

First American argues that since it is undisputed that Cottonwood Acres did not pay money for the Property, it was appropriate for First American to deny Cottonwood Acres's claim under Exclusion 3(e).  But Exclusion 3(e) requires that the loss "would not have been sustained if the Insured Claimant had paid value for the Title."  (Id.)  In other words, for denial to be appropriate under Exclusion 3(e), the failure to pay value for the land must have caused the loss of title.

First American claims that the court resolved this issue in its order denying summary judgment on First American's Fifteenth Affirmative Defense.  (See ECF No. 82 at 19.)  But the court never suggested that a failure to pay value would be independently sufficient for First American to deny Cottonwood Acres's claim.  Instead, the court stated that "there is a genuine issue of fact about whether Cottonwood Acres's failure to pay consideration contributed to its loss of title and need for indemnification in the Third Judicial District Court action on the Church's counterclaims—another valid basis on which First American could deny Policy coverage."  (ECF No. 82 at 19.)  As this language indicates, the court has always maintained that the casual connection between the failure to pay value and the loss of title is necessary for Exclusion 3(e) to apply.

Whether Cottonwood Acres's failure to pay value for the land caused its loss of title is a genuine factual question.  There is evidence suggesting that Cottonwood Acres's failure to pay

value caused the loss of title. For example, the Church's counterclaims for unjust enrichment are rooted in Cottonwood Acres's failure to compensate the Church fully for the Property. (See ECF No. 73-26 at 10–11.) A jury could decide that if Cottonwood Acres had paid the Church adequate consideration for the Property, Cottonwood Acres might have retained the title. At the same time, a jury could decide that regardless of whether Cottonwood Acres paid full value for the property, Cottonwood Acres still would have lost the title to the Property because of Mr. Augason's lack of authority to transfer the Property's title, in which case Exception 3(e)'s requirement that the loss of title "would not have been sustained if the Insured Claimant had paid value for the Title" would not be satisfied. (ECF No. 73-18 at 3.)

The same factual issue would prevent the court from finding that denial was appropriate under Exclusion 3(a) at the summary judgment stage. Under Exclusion 3(a), Cottonwood Acres cannot recover for defects "created … by the Insured Claimant." (Id.) First American argues that "Cottonwood created the defect or other matter by taking title to the property without providing valuable consideration to the Church." (ECF No. 83 at 11.) But as explained above, whether the failure to pay value for the property ultimately created the defect and loss of title is a genuine factual question.

### B. Whether Cottonwood Failed to Disclose Relevant Information

Under Exclusion 3(b), defects "not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy" are excluded from coverage by the Policy. (ECF No. 73-18 at 3.) First American argues that Exception 3(b) justifies the denial of Cottonwood Acres's claim since Mr.

Augason knew and failed to disclose to First American information about the facts underlying the Church's counterclaims.  (See ECF No. 83 at 11.)

The court disagrees and finds that there is evidence from which a jury could conclude that Mr. Augason disclosed all relevant information to First American.  Cottonwood Acres communicated to Mr. Smalley that Mr. Augason was the principal behind both the Church and Capital Dynamics.  (ECF No. 73-11.)  And Mr. Smalley was also aware that Mr. Augason sought to combine land parcels and then transfer the title to Cottonwood Acres.  (Id.)  Additionally, Cottonwood Acres sent First American a copy of the Third Judicial District Court's Default Judgment, which explains how Mr. Augason's status and rights as a Trustee of the Church.  (ECF No. 73-9.)  First American reviewed these materials and "conducted a public records search to identify and remedy, if possible, any issues or 'clouds' that could affect the policy."  (ECF No. 73-10 at 10.)  Accordingly, the court declines to grant summary judgment against the breach of contract claim based on Exclusion 3(b).

## II.     Breach of the Implied Covenant of Good Faith and Fair Dealing

"In Utah, a plaintiff may sue on a contract for: (1) breach of the contract's express terms; and/or (2) breach of the covenant of good faith and fair dealing, which is an implied duty that inheres in every contractual relationship."  Blakely v. USAA Cas. Ins. Co., 633 F.3d 944, 947 (10th Cir. 2011) (citations omitted).  "[T]he implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."  Id. at 948 (quoting Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985)).

11

"[T]he overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds." Blakely v. USAA Cas. Ins. Co., 500 F. App'x 734, 738 (10th Cir. 2012) (quoting Billings v. Union Bankers Ins. Co., 918 P.2d 461, 465 (Utah 1996)).  But when "an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so." Borandi v. USAA Cas. Ins. Co., No. 2:13-cv-141-TS, 2014 WL 7369891, at *4 (D. Utah Dec. 29, 2014) (quoting Billings, 918 P.2d at 465.)  And "[a]n insurer cannot be held liable for a breach of the duty of good faith when there are legitimate grounds for denial." Pheasantbrook Home Owners Ass'n v. The Travelers Indem. Co., 152 F. Supp. 3d 1342, 1360 (D. Utah 2016).

"[T]he fairly debatable defense should not be resolved through summary judgment if reasonable minds could differ as to whether the defendant's conduct measures up to the standard required for insurance claim investigations." Blakely, 500 F. App'x at 739 (quoting Jones v. Farmers Ins. Exch., 286 P.3d 301, 305 (Utah 2012)).  Therefore, the question in deciding whether to grant summary judgment on this claim is "whether the undisputed facts demonstrate that 'reasonable minds could differ' as to Defendant's compliance with Beck's standard for good faith and fair dealing." Id.

"[T]estimony about the industry standards for insurance adjusters and whether [the insurer] breached those standards is not within the ken of the average juror," and "[e]xpert testimony is necessary in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation." Finlinson v. Safeco Ins. Co. of Am., No. 2:20-cv-00742-DBB, 2023 WL 184203, at *6 (D. Utah Jan. 13, 2023) (citation omitted).  Where, as in this case, the claim for the breach of the duty of good faith and fair dealing alleges that the insurer breached its duty by failing to "diligently investigate and fairly evaluate" the claims

12

(Second Am. Compl. ¶ 57), this court has found that "[a]n insurer's claim-handling procedures are outside the knowledge of an average lay juror.  Without an expert to testify about the standard of care, the jury would be left to speculate about whether [the insurer] breached its duty to [the insured]."  Healy-Petrik v. State Farm Fire & Cas. Co., No. 2:20-cv-00611-TC, 2022 WL 464220, at *9 (D. Utah Feb. 15, 2022).

But summary judgment "requires the court to look at all the material facts," Blakely, 500 F. App'x at 740, and there are facts alleged that could indicate bad faith even in the absence of expert testimony explaining industry standards.  See id. (noting that "[b]y limiting its analysis to the amount of coverage, the district court overlooked a number of pertinent facts").  For example, Cottonwood Acres alleges that Mr. Augason provided First American with all relevant information when applying for the Policy.  (Second Am. Compl. ¶ 58.)  If First American had full knowledge when granting the Policy, a reasonable juror could find that First American acted in bad faith by later denying the claim based on these facts.  A reasonable juror could also find that Ms. Schreiber failed to "diligently investigate the facts … to determine whether a claim is valid," Blakely, 633 F.3d at 948, by either failing to address all the facts in Mr. Augason's file or by not interviewing Mr. Augason and his counsel.  Accordingly, the court finds that the Cottonwood Acres has alleged sufficient facts to overcome summary judgment on this claim.

### III.    Estoppel

"Utah law 'holds insurance agents to accurately representing policy provisions and honestly answering consumer questions.'"  Remund v. State Farm Fire & Cas. Co., 483 F. App'x 403, 407 (10th Cir. 2012) (quoting Youngblood v. Auto-Owners Ins. Co., 158 P.3d 1088, 1096 (Utah 2007)).  "'[C]onduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his

13

conduct' may constitute equitable estoppel." Homestead Golf Club, Inc. v. Pride Stables, 224 F.3d 1195, 1202 (10th Cir. 2000) (quoting Blackhurst v Transamerica Ins. Co., 699 P.2d 688, 691 (Utah 1985)).

> Estoppel may be applied to modify terms of an insurance policy when (1) an agent makes material misrepresentations to the prospective insured as to the scope of coverage or other important policy benefits, (2) the insured acts with prudence and in reasonable reliance on those misrepresentations, and (3) that reliance results in injury to the insured.

Youngblood, 158 P.3d at 1094 (citation omitted).

Cottonwood Acres alleges that the following language in the Denial Letter constitutes material misrepresentation: "As explained in greater detail below, my initial analysis of the Counterclaim is that the Counterclaim does appear to affect title to the Property. However, the Counterclaims, if proven true, appear to fall within the exclusionary language of the Policy—see Page 2, Exclusions from Coverage." (ECF No. 38-1 at 4.) According to the Plaintiff, the only reasonable interpretation of this language is that First American "determined the Counterclaim affected title to the Property and therefore implicated coverage by the Policy's insuring language." (ECF No. 88 at 32.) The court disagrees and finds that the language makes it clear that the Church's counterclaims appear to fall within the exclusions from coverage listed in the Policy. Such a statement is consistent with First American's ultimate denial of coverage. As such, the court declines to find a material misrepresentation and Cottonwood Acres cannot satisfy the requirements for estoppel.

Moreover, even if the statement did constitute a material misrepresentation, Cottonwood Acres could not demonstrate reasonable reliance on this statement because Cottonwood Acres had access to the Policy, which clearly listed certain exclusions to coverage. A claim for estoppel "cannot prevail where an insured had access to information, which if considered, would

14

have alerted him to question whether the coverage was available." <u>Remund v. State Farm Fire & Cas. Co.</u>, No. 2:07-cv-448-CW, 2010 WL 2025591 (D. Utah May 18, 2010), <u>aff'd,</u> 483 F. App'x 403 (10th Cir. 2012) (citation omitted). <u>See also</u> <u>Youngblood</u>, 158 P.3d at 1095 (quoting <u>Perkins v. Great-West Life Assurance Co.</u>, 814 P.2d 1125, 1130 (Utah Ct. App. 1991) ("[A] party claiming an estoppel cannot rely on representations or acts if they are contrary to his knowledge of the truth or if he had the means by which with reasonable diligence he could ascertain the truth.").

And even if Cottonwood Acres could demonstrate reasonable reliance, Cottonwood Acres would not be able to prove that this reliance led to the injury, since the alleged misrepresentation occurred weeks after Cottonwood Acres purchased the Policy. The court grants summary judgment on the estoppel claim.

## ORDER

For the foregoing reasons, the court orders as follows:

1.      The court DENIES the Defendant's Motion for Summary Judgment (ECF No. 83) against the claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

2.      The court GRANTS the Defendant's Motion for Summary Judgment (ECF No. 83) against the claim for Estoppel.

DATED this 31st day of March, 2026.

BY THE COURT:

Tena Campbell
United States District Judge

15